**ROBERTSON TRANSPORT COMPANY,**
**Appellant,**

**v.**

**Mrs. Hattie HUNT, Appellee.**

**No. 13709.**

Court of Civil Appeals of Texas.

San Antonio.

March 15, 1961.

Rehearing Denied April 12, 1961.

Lewright, Dyer & Redford, Corpus Christi, for appellant.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, Carter, Stiernberg, Skaggs & Koppel, Harlingen, for appellee.

POPE, Justice.

Mrs. Hattie Hunt sued Robertson Transport Company and obtained a judgment for $68,000 for the death of her husband as a result of a highway rear-end collision. Defendant Robertson appeals and urges that (1) certain findings have no support in the evidence, and, alternatively, are against the great weight of the evidence, (2) the verdict is incomplete, and (3) there are irreconcilable conflicts in the jury findings.

The accident occurred on the morning of July 15, 1958, on the highway between Kingsville and Raymondville. Deceased was driving a Ford and Robertson's driver was operating a tractor and tank trailer loaded with aviation gasoline. Both vehicles were headed in a southerly direction when Robertson's vehicle struck the rear end of the Ford driven by Hunt. Hunt was

killed. The jury found that defendant's driver negligently failed to pass the Hunt car on the left, failed to make proper application of the brakes, failed to sound the horn, failed to keep a proper lookout, and was driving without sufficient rest. Each of those was a proximate cause of the collision.

Defendant's contributory negligence issues were answered in favor of plaintiff.[1] These defensive issues are parts of three separate submissions of contributory negligence. Defendant argues that Issues 20, 25 and 28 have no support in the evidence and are against the great weight of the evidence. Defendant's theory was that Hunt had parked or was slowly driving off the main traveled portion of the highway and then negligently drove onto the highway in front of the truck, that he did this when defendant's truck was so close as to constitute an immediate hazard, and also that his failure to keep a look-out was a proximate cause of the collision.

■ There was evidence and, from the whole record, the findings against the defendant are not against the great weight of the evidence. Defendant had the burden to prove its defenses. Defendant relied upon the testimony of A. D. Perry, who saw the accident as he drove from the south facing the two vehicles which collided as they drove from the north. Defendant also relied upon the deposition testimony of J. H. Caraway, deceased at the time of the trial, who was the driver for defendant, Robertson. There were conflicts between the testimony of these two witnesses. Portions of both Perry's and Caraway's testimony were also contradicted by the physical facts surrounding the accident as revealed by pictures, tire marks in the caliche to the side of the main traveled portion of the highway, skid marks, and the positions of the vehicles after the accident. Perry testified that Hunt suddenly drove onto the highway from the shoulder in front of defendant's oncoming truck. Caraway partially supported that idea by stating that Hunt had two wheels off and two wheels on the highway. The State Highway Patrolman who investigated the accident raised a fact issue, since he stated that he found

"20. Do you find from a preponderance of the evidence that at and immediately prior to the time of the collision involved herein, Louis Hunt drove his automobile from a point off of the main traveled portion of the highway onto the main traveled portion of the highway?" Answered "No".

21, 22, 23 and 24, conditioned on affirmative answer to 20, were unanswered, except for 24 which disregarded the condition.

"24. Do you find from a preponderance of the evidence that at the time Louis Hunt drove his automobile from a point off of the main traveled portion of the highway onto the main traveled portion of the highway, if he did so, the oncoming truck of the Defendant was so closely adjacent as to constitute an immediate hazard?" Answered "Yes".

"In connection with the foregoing Special Issue you are instructed that the term 'so closely adjacent as to constitute an immediate hazard' is determined by whether or not a person of ordinary care or prudence, in the position of Louis Hunt, would reasonably have concluded that he could not move his said automobile in such manner without danger of collision."

25. Conditioned on "yes" to 24, the issue was:

"Do you find from a preponderance of the evidence that the driving of such automobile by the said Louis Hunt at the time and in the manner last above inquired about, if he did so, was negligence?" Answered "No".

26. Proximate cause was answered "No".

"27. Do you find from a preponderance of the evidence that at and immediately prior to the time of the collision involved herein Louis Hunt failed to maintain such a lookout to discover the presence of on-coming traffic from his rear as a reasonably prudent operator in the exercise of ordinary care would have maintained under the same or similar circumstances?" Answered "Yes".

28. Conditioned on "yes" to 27, the issue was:

"Do you find from a preponderance of the evidence that the failure of Louis Hunt, as is last above inquired about, if you have so found, was a proximate cause of the collision involved herein?" Answered "No".

skid marks in the caliche beside the highway south of the point of impact but none to the north of that point. Perry's powers of observation were also effectively challenged. An ophthalmologist testified that three months prior to the accident he examined Perry's eyes, which, with glasses, were corrected to 20/40 vision in the right eye and 20/30 in the left. At that time Perry had early stages of cataracts. Nine months later, the cataract on the right eye had progressed to such a point that the doctor could not see into the eye. At that time Perry, with glasses, could only see enough to count fingers within a range of ten feet. His left eye, with glasses, then had vision of 20/100. Sixteen months after the accident a cataract was removed from the left eye. Perry's capacity to judge distances was also effectively challenged. He once stated that Hunt turned onto the highway when he, Perry, was 500 feet away. Another time he stated that he was 1000 feet away at the time of impact. His testimony at the trial varied from his prior written statement. Perry, when asked at the trial to demonstrate with car models how the accident occurred, would not do so.

[2] Caraway's testimony, some of which was helpful to plaintiff, revealed substantial discrepancies concerning his own speed, his braking actions, the position of Hunt on the highway when he ran into him, the witness Perry's position on the highway before and after the accident, and Hunt's speed and angle at the time of impact. Apart from these testimonial discrepancies, the jury could properly consider the physical facts found after the collision. The skid marks on the pavement, the indentations upon the rear of the Hunt vehicle and the expert testimony support the inference that the impact occurred while Hunt was headed straight south and well on the main traveled portion of the highway and not as he angled onto the highway. In our opinion, Issues 20, 25 and 28 were properly submitted to the jury for fact findings. International-Great Northern R. Co. v. Casey, Tex.Com.App., 46 S.W.2d

669; Schuhmacher Co. v. Bahn, Tex.Civ. App., 78 S.W.2d 205. Special Issue 28 concerns proximate cause which defendant, Robertson, argues was established as a matter of law. For the reasons often expressed in former opinions, we overrule the point. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 364; Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, 590; Southland-Greyhound Lines v. Richardson, 126 Tex. 118, 86 S.W.2d 731; Permian Mud Service, Inc. v. Sipes, Tex.Civ.App., 339 S.W.2d 81. The findings had support in the evidence and were not against the great weight of the evidence.

Defendant, Robertson, next contends that the verdict is incomplete. The jury did not answer certain issues because those issues were conditioned upon other issues which were answered against the defendant. The issues answered against the defendant were those we have already discussed, and this point would be valid had we not decided that those findings are supported by the evidence.

Finally, defendant Robertson says that conflicts in the jury answers exist between (1) the negative answer to Issue 20 and the affirmative answer to Issue 24, (2) the affirmative answer to Issue 24 and the negative answer to Issue 25, and (3) the affirmative answer to Issue 24, on the one hand, and the answers to Issues 27 and 28, on the other. Appellant, throughout the argument about the first of these claimed conflicts ignores two facts which the charge discloses. Appellant ignores the fact that Special Issue 24 was conditioned upon an affirmative answer to Issue 20, but that the jury overlooked the condition and answered the issue despite the instruction. Second, appellant ignores the fact that Issue 24 in asking whether at the time Louis Hunt drove his automobile from a point off the main traveled portion of the highway onto the main traveled portion of the highway, "if he did so," the oncoming truck of the defendant was so

closely adjacent as to constitute an immediate hazard. The jury, therefore, was charged not to answer Issue 24 at all in view of its answer to Issue 20. Texas Emp. Ins. Ass'n v. Collins, 156 Tex. 376, 295 S.W.2d 902, applies a common-sense rule in passing on conflicting findings. It uses a test of whether the jury intent is actually in doubt. In our opinion, the jury intent is not in doubt in this case. In answering Issue 24, the jury first overlooked or disregarded the instruction to answer only in the event of an affirmative answer to Special Issue 20. It then assumed the hypothetical case built into Issue 24 implicit in the words "if he did so." The jury said, in effect, "While we have already found and believe that Hunt did not drive his automobile from a point off the main traveled portion of the highway, nevertheless, since you have asked us what we would answer if he did so, and if we should be wrong in our answer to Issue 20, then we say that Hunt did so at a time when there was an immediate hazard."

We then move to the next claimed conflict between the answers to Issues 24 and 25. Issue 24 shows that negligence is actually defined into the issue. Issue 25, in asking if the same thing is negligence, actually was duplicitous, but Issue 24 was answered "Yes" and Issue 25 was answered "No." Here we do have conflicting answers, but the conflict is with respect to issues which are purely hypothetical. We have previously discussed why Issue 24 was hypothetically answered and so intended by the jury, and hence may be disregarded. When we come to the next issue, we find that it was conditioned upon the "Yes" hypothetically answered by the jury, and here again the same words "if he did so" are built into the issue. Here again the jurors believed that they were asked to answer based upon an assumption which, in answer to Issue 20, they had al-

ready decided was contrary to fact. Both Issues 24 and 25 were hypothetically answered and were immaterial. A conflict between the two immaterial issues is unimportant. See, Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97; Travelers Insurance Co. v. Henley, Tex.Civ.App., 328 S.W.2d 944.

The third claimed conflict again depends upon the affirmative answer to Issue 24. Defendant says that issue conflicts with Issues 27 and 28. The jury in answer to Issue 24 said that Hunt drove upon the highway when defendant's truck was so closely adjacent as to constitute an immediate hazard. In answer to Issue 27, the jury said that Hunt failed to keep a proper lookout to the rear. In answer to Issue 28 they said that such a failure was not a proximate cause of the accident. Once again it must be stated that for a conflict to exist, it is necessary to give force to an issue which was hypothetically answered and so intended by the jury. The court disregarded the issue and, for the reasons discussed, we do too. When that issue is disregarded, there is nothing in conflict. For another reason, we see no conflict between the issues. Issues 24 and 27 were both answered in the affirmative favorably to defendant. It is Issue 28 about proximate cause on the failure to keep a lookout which was in the negative. Defendant is actually arguing that an affirmative finding that Hunt drove into a hazardous situation conflicts with a negative finding that a failure to maintain a lookout to the rear caused the collision. The issues concern two different claims of negligence, and the one does not necessarily include the other. Also, one is on the fact of negligence, the other is about proximate cause. There is no conflict between an affirmative finding on the one and a negative finding on the other.

The judgment is affirmed.